UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA



United States of America,

    Plaintiff,

    v.

Ricardo Renteria,

    Defendant.

2:18-cr-00119-VAP-1

**Memorandum Decision and Findings of Fact and Conclusions of Law**

The following constitutes the Court's Findings of Facts and Conclusions of Law pursuant to Federal Rule of Criminal Procedure 52.

## I.    PROCEEDINGS

A Grand Jury in the Central District of California returned a three count Indictment on March 7, 2018, charging Defendant Ricardo Renteria ("Defendant") with Possession with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii); Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922(g)(1); and Carrying a Firearm During and In Relation to, and Possessing a Firearm in Furtherance of, a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). (Doc. No. 11).

Defendant waived his Sixth Amendment right to trial by jury, and the case was tried to the Court on February 5, 2019. (Doc. No. 77). Before

trial, the parties entered into three stipulations: (1) that at the time of the filing of the Indictment, Defendant had been convicted of a felony crime punishable by a term of imprisonment exceeding one year, (Doc. No. 74); (2) that Government's Exhibit 1 was admissible into evidence and consisted of 6,197 grams of actual methamphetamine and corresponding packaging that was recovered from the back seat of Defendant's Chevrolet Tahoe on February 3, 2018, (Doc. No. 75); and (3) that the following facts and trial evidence are admissible at trial[1]:

1. The methamphetamine recovered from Defendant's Chevrolet Tahoe on February 3, 2018, contained approximately 6,197 grams of actual methamphetamine.
2. The Smith & Wesson, model 64, .38 special caliber revolver, bearing serial number D775493, found in Los Angeles, California, on February 3, 2018, was manufactured by Smith & Wesson in Springfield, Massachusetts, and was seized in Los Angeles County, within the Central District of California, on February 3, 2018, and, therefore, was shipped or transported in interstate commerce. Furthermore, the Smith & Wesson, model 64, .38 special caliber revolver, bearing serial number D775493, is a firearm as defined under Title 18, United States Code, Section 921(a)(3).
3. The six rounds of .38 special caliber ammunition bearing headstamps "CBC," which were manufactured by Companhia Brasileira de Cartuchos in Brazil, and were seized in Los Angeles

---

[1] Each of the following enumerated paragraphs are taken from the parties' Joint Stipulation of Facts and Testimony. (Doc. No. 73).

2

County, within the Central District of California, on February 3, 2018, were shipped or transported in foreign commerce.

4. Before February 3, 2018, Defendant had been convicted of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

    a. Delivery/Intent to Deliver a Controlled Substance, in violation of Nebraska Penal Code Section 3557, in the District Court of the State of Nebraska, County of Douglas, Case Number NB28015J, on or about October 25, 2002; and

    b. Felon in Possession of a Firearm, in violation of Title 18, United States Code, Section 922(g)(1), in the United States District Court, District of Nebraska, Case Number 8:03-CR-00073-LSC-FG3-1, on or about September 11, 2003.

5. If Los Angeles Police Department ("LAPD") Officer Ruben Mejia were called to testify in this matter, he would testify as follows:

    a. Officer Mejia works for the LAPD Southwest Division. On or about February 3, 2018, he was in Los Angeles, California, riding in his patrol car with his partner, LAPD Officer David Reynoso.

    b. On or about the afternoon of February 3, 2018, Officer Mejia saw Defendant in a white Chevrolet Tahoe (the "Tahoe") travelling northbound on Bixel Street. Officer Mejia saw the Tahoe make a right turn without signaling into an alley that connected Bixel Street and Firmin Street. As Officer Mejia's patrol car approached the alley, he heard a loud screeching noise, like the sound of a car peeling out.

c. Officer Mejia's patrol car then turned into the alley to pursue the Tahoe and heard a second screeching noise coming from some distance away. As he approached Firmin Street, he saw what appeared to be fresh dark tire marks going left in the direction of Temple Street. Officer Mejia's patrol car made a left turn onto Firmin Street toward Temple believing that to be the direction the Tahoe had gone. As the patrol car approached the intersection of Firmin and Temple streets, Officer Mejia saw another set of dark tire marks indicating that a car had turned left onto Temple Street. Officer Mejia's patrol car turned left onto Temple Street and saw the Tahoe turning right onto Edgeware Road. The patrol car turned right on Edgeware Road to follow the Tahoe and saw the Tahoe turn right onto Boston Street. The patrol car did likewise and pulled up behind the Tahoe as it was parking on Boston Street.

d. Based on his observations of the Tahoe during this pursuit, Officer Mejia believed that the driver of the Tahoe had seen his patrol car and was trying to avoid law enforcement.

e. Defendant then exited the Tahoe and began speaking with Officers Mejia and Reynoso. Defendant was the only person inside the Tahoe at the time. Officer Mejia ran the license plate and determined that that Defendant was the Tahoe's registered owner.

f. At some point during the interaction, Officer Mejia asked Defendant if he and Officer Reynoso could search his car.

4

Defendant stated the officers could "go ahead" and search it. Officer Reynoso then searched Defendant's vehicle.

g. After Officer Reynoso conducted a search of Defendant's vehicle, he showed Officer Mejia fourteen aluminum packages in a black plastic bag that he had found behind the driver's seat of the Tahoe. The contents of the fourteen aluminum packages were later determined to be methamphetamine – approximately one pound per package.

h. Officer Mejia also searched the car and found United States currency in the center console and on Defendant's person. Officer Mejia also found a laundry bag in Defendant's backseat that was filled with Defendant's laundry. Officer Mejia knew this because Defendant stated that he had picked up his laundry earlier that day.

i. Based on Officer Mejia's observations of Defendant, the fact that Defendant had tried to evade law enforcement, and the location of the methamphetamine in Defendant's back seat, directly behind the driver's seat where Defendant was sitting, and the proximity of the drugs to Defendant's laundry, Defendant appeared to be aware of the methamphetamine's presence and had the power and intention to control it.

6. If LAPD Officer David Reynoso were called to testify in this matter, he would testify as follows:

a. Officer Reynoso works for the LAPD Southwest Division. On or about February 3, 2018, he was on patrol in the area of Bixel Street and Temple Street near the Angelino Heights

neighborhood of Los Angeles, California. His partner, LAPD Officer Ruben Mejia, was in the patrol car with him.

b. On or about the afternoon of February 3, 2018, Officer Reynoso saw Defendant in the Tahoe going north on Bixel Street. The Tahoe then made a right turn into an alley without signaling. Officer Reynoso and Officer Mejia turned down the alley to follow the Tahoe. During the pursuit, Officer Reynoso's patrol car turned left on Firmin Street, left on Temple Street, right on Edgeware Road, and right on Boston Street. Officer Reynoso's patrol car finally caught up with the Tahoe as it was parking on Boston Street.

c. Based on the way Defendant was driving the Tahoe, Officer Reynoso believed that the Tahoe had seen the LAPD patrol car and was trying to get away from the police.

d. After Officer Reynoso and Officer Mejia pulled up behind the Tahoe, Defendant got out to speak to the officers. Defendant was the only person inside the Tahoe. At some point during the conversation, Officer Reynoso started talking to Defendant about cars. Defendant stated that he had purchased special 26-inch wheel rims and mufflers for his Tahoe. Later in that same conversation, Officer Reynoso heard Defendant give permission to search his Tahoe.

e. After Defendant consented to the search, Officer Reynoso opened the rear passenger door of the Tahoe, behind the driver's seat where Defendant had been siting. Inside, Officer Reynoso found a laundry bag filled with men's clothing

on the rear passenger seat on the driver's side. On the floor, directly behind the driver's seat, and just below the laundry bag, Officer Reynoso found a black plastic trash bag with fourteen foil-wrapped packages inside. The packages were later tested and found to contain methamphetamine.

f.  Officer Reynoso searched Defendant's person and found United States currency. Officer Reynoso then counted the money found on Defendant's person as well as the currency that Officer Mejia found in the center console of his Tahoe. The currency totaled over $1,800: three $100 bills, fifteen $50 bills, and thirty-nine $20 bills.

g.  Based on the amount of methamphetamine found in the car, Officer Reynoso believed that Defendant likely had a gun in the car. But because the sky was darkening making search conditions more difficult, Office Reynoso had the Tahoe towed to the LAPD station to continue the search. He asked for the assistance of an LAPD gun dog handler and a gun dog trained to detect firearms to search the Tahoe for a fire-arm. After the gun dog sniffed the Tahoe, Officer Reynoso saw the gun dog handler remove the driver's side window control panel revealing a hidden compartment. Inside the compartment, Officer Reynoso found a Smith & Wesson, model 64, .38 caliber revolver, bearing serial number D775493. The gun was fully loaded with six rounds of .38 special caliber ammunition bearing headstamps "CBC,"

        which were manufactured by Companhia Brasileira de Cartuchos in Brazil.

    h. Based on Officer Reynoso's observations of Defendant, the fact that Defendant tried to evade his patrol car, the location of the methamphetamine directly behind where Defendant was sitting in the Tahoe, and the fact that the bag with the methamphetamine was next to Defendant's laundry bag, Defendant appeared to be aware of the methamphetamine's presence and had the power and intention to control it. Further, because Defendant had tried to avoid law enforcement, had a fully loaded gun in a compartment right next to where Defendant was sitting in the driver's seat, and because he had a significant quantity of methamphetamine in his car, Defendant seemed to be aware of the loaded gun's presence and had the power and intention to control it.

7. If Drug Enforcement Administration ("DEA") Special Agent Justin Watt were called to testify in this matter, he would testify as follows:

    a. Special Agent Watts is qualified as an expert in drug distribution and methamphetamine pricing by virtue of his training and experience.

    b. Based on his training and experience, Special Agent Watt would opine that a quantity of methamphetamine of over 10 pounds, or 4,350 grams, would be considered a wholesale quantity of methamphetamine. In other words, 10 pounds or

        more of methamphetamine is a significant amount of methamphetamine that would likely be resold to other methamphetamine distributors and not for one's own personal use.

  c. Based on the HIDTA drug sheet for the Los Angeles area, which is a collection of narcotics pricing information for the Los Angeles area to which the DEA has access, one pound of methamphetamine would be sold for, on average, $2,000 to $3,000.

## II. EVIDENCE PRESENTED AT TRIAL

### A. Count I: Possession of Methamphetamine with Intent to Distribute

The Government presented sufficient evidence at trial, including the stipulated facts set forth above, to satisfy each element of the crime charged in Count I of the Indictment beyond a reasonable doubt. The Government also met its burden of proving that the amount of methamphetamine exceeded 500 grams.

The elements of this offense, violation of Section 841(a)(1) of Title 21 of the United States Code, are:
1. Defendant knowingly possessed methamphetamine; and
2. Defendant possessed it with the intent to distribute it to another person.

Here, the Government proved beyond a reasonable doubt that on February 3, 2018, in Los Angeles, California, within the Central District,

Defendant was driving a Chevrolet Tahoe registered to him, and that he acknowledged he owned. In the rear seat of the Tahoe, Officer Reynoso found a bag of men's clothing. (Doc. No. 73, ¶ 6e). Defendant told the officers he had picked up his laundry earlier that day. (*Id.* at ¶ 5h). Behind the driver's seat, below the laundry bag, Officer Reynoso found a large, black, unsealed garbage bag containing 14 foil-wrapped packages of methamphetamine, (*Id.* at ¶ 6e), totaling 6,197 grams of actual methamphetamine, (Doc. No. 75). The location of the methamphetamine directly behind the driver's seat, in close proximity to Defendant's laundry, and within arm's reach of Defendant while he was driving the Tahoe, supports a reasonable inference that Defendant knowingly possessed it. The parties stipulated that Officer Reynoso would have testified that Defendant used evasive driving maneuvers in an attempt to evade law enforcement once he spotted the officers' patrol car, (Doc. No. 73, ¶ 6c; *see id.* at ¶ 5c); this testimony provides further support for the conclusion Defendant knowingly possessed the methamphetamine, as the presence of the drugs in an open bag in the back passenger area of the Tahoe provided a motivation to avoid contact with the police. Hence, the Court finds the Government has proved the first element beyond a reasonable doubt.

Defendant stipulated that the drugs recovered from his Tahoe contained approximately 6,197 grams of actual methamphetamine. (Doc. No. 75). The stipulated testimony of DEA Special Agent Justin Watt established that such an amount is considered a wholesale amount, intended for resale. (Doc. No. 73, ¶ 7b). The value of the methamphetamine recovered from the Tahoe ranged from approximately

$27,000 to $40,000. (*See id.* at ¶ 7c). Furthermore, $1,800 in United States currency was recovered from Defendant's person and the center console of his vehicle. (*Id.* at ¶ 6f). The presence of this cash further supports the finding that Defendant possessed the methamphetamine intending to distribute it.

Hence, the Government proved both elements of the charge in Count I, and the amount of the methamphetamine, beyond a reasonable doubt.

**B. Count II: Felon in Possession of a Firearm or Ammunition**

The elements of this offense, violation of 18 U.S.C. § 922(g)(1), are:

1. Defendant knowingly possessed a Smith & Wesson, model 64, .38 caliber revolver, or six rounds of Companhia Brasileira de Cartuchos .38 special caliber ammunition;
2. The Smith & Wesson, model 64, .38 caliber revolver, or six rounds of Companhia Brasileira de Cartuchos .38 special caliber ammunition had been shipped or transported from one state to another, or between a foreign nation and the United States; and
3. At the time Defendant possessed the Smith & Wesson, model 64, .38 caliber revolver, or six rounds of Companhia Brasileira de Cartuchos .38 special caliber ammunition, Defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year.

The Government proved all of these elements beyond a reasonable doubt. The firearm and ammunition were seized from Defendant's vehicle in Los Angeles, California, within the Central District of California. The second element is satisfied by the parties' stipulations that the weapon and ammunition were manufactured outside California and the United States, respectively, and traveled in interstate and foreign commerce. (Doc. No. 73, ¶¶ 2, 3). The third element is satisfied by the parties' stipulation that as of February 3, 2018, Defendant had twice been convicted of felony crimes. (*Id.* at ¶ 4; Doc. No. 74).

The Government also met its burden of proving the first element, that Defendant knowingly possessed the gun and ammunition on February 3, 2018.

After the Tahoe was transported to the Rampart Division station, LAPD Officer Stephen Jenkins assisted Officers Mejia and Reynoso in searching the vehicle for weapons. Officer Jenkins has 29 years of experience with the LAPD and had been a K9 handler for ten and a half years before February 3, 2018. Officer Jenkins used Akim, a dog trained to detect the presence of black powder, a substance emitted when a gun is fired, to assist in searching the Tahoe for weapons. After Akim "alerted" to the area of the door locks and window controls console in the driver's side door, Officer Jenkins removed the console panel. He testified that he did so without using any tools, that it took him two to three seconds to lift up the panel, and that he was able to lift up the console panel quickly and easily even though he suffers from a permanent tremor in his hand affecting his

fine motor skills. After lifting up the console, he immediately spotted the rubber grips of a handgun. The loaded weapon was immediately accessible and within easy reach of Defendant, the driver and only occupant of the Tahoe.

Officer Reynoso and Special Agent Watt testified that persons in possession of large amounts of drugs are frequently armed in order to protect themselves from robbery, further supporting the inference that Defendant, travelling in a vehicle containing a "wholesale" amount of methamphetamine, possessed the loaded Smith & Wesson revolver. Hence, the Government proved beyond a reasonable doubt that Defendant knowingly possessed the gun and ammunition on February 3, 2018.

**C. Count III: Possession of a firearm in furtherance of a drug trafficking crime**

The elements of the offense charged in Count III of the indictment, violation of 18 U.S.C. § 924(c), are:

1. Defendant committed the crime of possession with intent to distribute methamphetamine, as charged in Count I of the indictment, a drug trafficking offense;
2. Defendant knowingly possessed a Smith & Wesson, model 64,.38 caliber revolver; and
3. Defendant possessed the Smith & Wesson revolver in furtherance of the crime charged in Count I, possession with intent to distribute methamphetamine.

13

The Government proved the first and second elements, as set forth in Section II, Subsections A and B, above.

To establish that Defendant possessed the firearm "in furtherance" of his drug crime, the Government "must show that the defendant intended to use the firearm to promote or facilitate the drug crime." *United States v. Rios*, 449 F.3d 1009, 1012 (9th Cir. 2006). While actual use of the firearm is unnecessary to establish this element, "mere possession of the gun is not enough." *United States v. Lopez*, 477 F.3d 1110, 1115 (9th Cir. 2007). "In addition to possession, the Government must demonstrate a nexus between the gun discovered and the underlying offense." *Id.* Where the firearm is "strategically located within easy reach," *United States v. Krouse*, 370 F.3d 965, 968 (9th Cir. 2004), or "'readily accessible' during the commission of the drug crime," *Lopez*, 477 F.3d at 1115, there is a sufficient nexus to establish the possession was in furtherance of the drug crime. *See e.g.,* Lopez, 477 F.3d at 1115 (holding that where drugs were found in a defendant's car and the firearm was "easily within [his] reach at the time when the officer pulled over [his] car" the firearm was possessed in furtherance of the drug crime); *United States v. Hector*, 474 F.3d 1150, 1158 (9th Cir. 2007) (holding that the "in furtherance" element was satisfied where "the gun was loaded, within [Defendant's] easy reach, near the entryway where the drugs were sold, and on the path to where the drugs were stored"); *United States v. Mosley*, 465 F.3d 412, 418 (9th Cir. 2006) (holding that where the facts "paint the picture of a drug dealer ready to threaten or fire upon any would-be intruder who might enter his base of operations to steal drugs or drug proceeds" the element is satisfied).

The following evidence satisfied the Government's burden as to the third element of this offense. Once he spotted Officers Reynoso and Mejia in their marked LAPD patrol car on February 3, 2018, Defendant engaged in evasive driving maneuvers to elude the officers. (Doc. No. 73, ¶¶ 5d, 6c). When the officers stopped Defendant's vehicle, a large amount of actual methamphetamine was found within his arm's reach and next to his personal property, in the back seat, and officers also recovered $1,800 in United States currency. (*Id.* at ¶¶ 5i, 6e, 6f; Doc. No. 75). Both Officer Reynoso and Special Agent Watt testified that in their experience, persons trafficking in large amounts of drugs, like the amount found here, are usually armed, in order to protect themselves and the contraband. The Smith & Wesson revolver, fully loaded, was located in the driver's side window console, (Doc. No. 73, ¶ 6g), easily retrievable by Defendant but hidden from view, and also in close proximity to the methamphetamine. Hence, the weapon was "strategically located within easy reach" and "readily accessible during the commission of the drug crime." The only reasonable inference to be drawn from these facts is that Defendant possessed the fully-loaded revolver in furtherance of his drug trafficking activities, i.e., his possession was with the intent to distribute 6,197 grams of actual methamphetamine. The Court finds the Government proved beyond a reasonable doubt all of the elements of the crime charged in Count III.

### III. CONCLUSION

For the foregoing reasons, the Court finds the Defendant, Ricardo Renteria, guilty as charged in Counts I, II, and III of the Indictment.

The matter is set for sentencing on June 3, 2019 at 9:00 a.m.

**IT IS SO ORDERED.**

Dated: 3/27/19

Virginia A. Phillips
Chief United States District Judge